UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION - DETROIT

In re:

PAUL EMERSON MCCAULLEY,
JEANINE MARIE MCCAULLEY,   Case No. 11-58625
                            Hon. Walter Shapero
Debtors.                    Chapter 7
_____/

STEPHEN FORRISTALL,

  Plaintiff,

v.                           Adv. Pro. 12-04076

PAUL EMERSON MCCAULLEY,
JEANINE MARIE MCCAULLEY,

  Defendants.
_____/

### OPINION DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGEMENT

#### INTRODUCTION

Plaintiff commenced this non-dischargeability action, for which he moved for summary judgment on the 11 U.S.C. § 523(a)(2)(A) and (a)(6) counts on the basis of the claimed collateral estoppel effect of a Texas U.S. District Court judgment that found Defendants liable for violations of Texas law. This Court denies Plaintiff's Motion for Summary Judgment.

#### FACTS

Around December 2005, Texas resident Stephen Forristall ("Plaintiff") alleges that he purchased a vehicle on eBay.com from Michigan residents Paul McCaulley and Jeanine McCaulley ("Defendants") via Idaho selling agent Hot Web, Inc. ("Hot Web"), which

1

represented Defendants in the transaction. Plaintiff averred that Defendants, via Hot Web, represented the vehicle to be a "very rare 'W' Code 427 410 HP Side Oiler speed Ford Fairlane" worth around $125,000. After supposedly paying for the vehicle with cash and another vehicle, Plaintiff learned that the vehicle sold to him by Defendants was a forgery (a "re-bodied" imposter, comprised of after-market parts and parts from other vehicles, with the VIN number from an authentic vehicle welded on) that was worth only about $25,000. Plaintiff sued Defendants, Hot Web, and its CEO Brian Hanold, in a state court in Texas. On the basis of diversity jurisdiction, Hot Web and Brian Hanold removed the case to the United States District Court for the Southern District of Texas in Houston ("Texas District Court"). The removing defendants were later dismissed by Plaintiff, leaving the McCaulleys as the sole defendants.

Plaintiff's complaint alleged a number of different theories including several violations of the Texas Deceptive Trade Practices Act ("DTPA"), breach of warranty for fitness for a particular purpose, common law fraud, and breach of contract. Defendants answered the suit and the matter moved forward with the discovery and settlement-facilitation processes. Less than three months before the scheduled mediation, the Court issued an order permitting the withdrawal of Defendants' attorney, on the apparent basis, either in whole or in part, that Defendants stopped paying that attorney. Defendants thereafter failed to appear at either the mediation or at the bench trial, and because they failed to respond to Plaintiff's requests for admission, those matters by rule were deemed admitted. At the scheduled bench trial, the Texas District Court entered a "post-answer default judgment" against Defendants, which is a term of art in Texas denoting a procedure whereby Defendants' answer puts Plaintiff's allegations at issue but the Defendants later defaulted. In such a situation, judgment cannot be entered on the

2

pleadings alone, but Plaintiff had to offer evidence and prove his case. See Harrison v. Kiwi Servs., Inc. (In re Harrison), 180 Fed. Appx. 485, 487-88 (5th Cir. 2006). Plaintiff did offer such evidence and the Court found Defendants liable to Plaintiff in the amount of $385,722.11 (comprised of $100,000 for economic "benefit of the bargain" damages, which was trebled, plus $85,722.11 for attorney's fees). Additionally, the Court adopted and signed Plaintiff's proposed findings of fact and conclusions of law. This Court has obtained and reviewed the entirety of the extensive record from the initial filing in the Texas state court, its removal to the Texas District Court, and its subsequent adjudication.[1]

Defendants listed that judgment debt in their chapter 7 bankruptcy schedules, noting on their Schedule F, a debt owing to Plaintiff stemming from a "11/5/09 Judgment," amounting to $385,000. Plaintiff filed this non-dischargeability action, and now has moved for summary judgment wherein he argues that the Texas District Court judgment decided the issues that satisfy the requirements of 11 U.S.C. § 523(a)(2)(A) as relates to false pretenses, false representation, or actual fraud and (a)(6) as relates to willful and malicious injury, and that as such, is entitled to collateral estoppel effect in this Court.[2]

---

[1] Defendants submitted a Supplementary Memorandum asserting that Plaintiff is now himself advertising and attempting to sell the subject vehicle as an authentic model. This is (a) not part of the record upon which this opinion is based and (b) irrelevant, even if true, to this particular opinion, especially because the purported advertisement bears a date well after the issuance of the Texas judgment.

[2] In their arguments, the parties appear at times to blur the distinction between collateral estoppel (issue preclusion) and res judicata (claim preclusion). This Court recognizes that only collateral estoppel is at issue in the adversary proceeding and in this motion, i.e. whether the previous Court's findings of fact should be accepted by this Court and should not be re-litigated. Res judicata is irrelevant because this is an entirely different cause of action and because res judicata is inapplicable to non-dischargeability proceedings. See Bay Area Factors v. Calvert (In re

3

DISCUSSION

The Summary Judgment Standard

Fed.R.Civ.P. 56(c) provides the statutory basis for summary judgment, and is made applicable to adversary proceedings via Fed.R.Bankr.P. 7056. Summary judgment is only appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Id. at 247-48 (emphasis original). A "genuine" issue is present "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248. "The initial burden is on the moving party to demonstrate that an essential element of the non-moving party's case is lacking." Kalamazoo River Study Grp. v. Rockwell Int'l Corp., 171 F.3d 1065, 1068 (6th Cir. 1999)(citing Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986)). "The burden then shifts to the non-moving party to come forward with specific facts, supported by evidence in the record, upon which a reasonable jury could return a verdict for the non-moving party." Kalamazoo River Study Grp., 171 F.3d at 1068 (citing Anderson, 477 U.S. at 248). "The non-moving party, however, must provide more than mere allegations or denials… without giving any significant probative evidence to support" its position. Berryman v. Rieger, 150 F.3d 561, 566 (6th Cir. 1998)(citing Anderson, 447 U.S. at 256).

---

Calvert), 105 F.3d 315, 318 n.4 (6th Cir. 1997)(citing Brown v. Felsen, 442 U.S. 127, 139 n.10 (1979)).

## The Collateral Estoppel Standard

"Under collateral estoppel, once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation." Montana v. United States, 440 U.S. 147, 153 (1979)(citations omitted). "Principles of collateral estoppel apply in non-dischargeability actions." Livingston v. Transnation Title Insurance Co. (In re Livingston), 372 Fed. Appx. 613, 617 (6th Cir. 2010). "For judgments in diversity cases [such as that of the Texas District Court], federal law incorporates the rules of preclusion applied by the State in which the rendering court sits." Taylor v. Sturgell, 553 U.S. 880, 891 n.4 (2008)(citation omitted).

Under applicable Texas state law, collateral estoppel prevents parties from re-litigating an issue that was (a) fully and fairly litigated, (b) essential to the prior judgment, and (c) identical to the issue in the pending action. Bomar Oil & Gas, Inc. v. Loyd, 381 S.W.3d 689, 691 (Tex. App. 2012); In re ProCare Auto. Serv. Solutions, LLC, 359 B.R. 653, 657 (Bankr. N.D. Ohio 2007)(both citing State Dep't of Pub. Safety v. Petta, 44 S.W.3d 575, 579 (Tex. 2001)). Texas law recognizes that collateral estoppel can apply to a "post-answer default judgment." See Harrison, 180 Fed. Appx. at 486, 489. Defendants cited In re Fitch, 349 B.R. 133 (Bankr. N.D. Tex. 2006) for a contrary proposition, but this Court notes that the case deals with a *no-answer* default judgment.

Defendants acknowledge that (a) they filed an answer in the Texas action; (b) they did not appear at the bench trial; (c) Plaintiff presented at a bench trial evidence to support his case; and (d) the judgment in question arises therefrom. Accordingly, there is no question, despite

Defendants' protests that their defenses were not heard at the bench trial, that the first requirement for collateral estoppel under Texas law is satisfied, i.e. the matter was fully and fairly litigated under applicable Texas law. The two remaining requirements at issue are whether the issues litigated in the Texas action are identical to those here and whether they were also "essential" to the prior judgment.

## The Texas District Court's Findings

The Texas District Court judgment was based on various DTPA violations. Tex. Bus. & Com. Code § 17.46 *et seq*. That statute states in relevant part:

(a) False, misleading, or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful and are subject to action by the consumer protection division under Sections 17.47, 17.58, 17.60, and 17.61 of this code.

(b) Except as provided in Subsection (d) of this section, the term "false, misleading, or deceptive acts or practices" includes, but is not limited to, the following acts:

\*\*\*

(5) representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he does not;

\*\*\*

(7) representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another[.]

Also relevant is the damages section, § 17.50, which states:

(a) A consumer may maintain an action where any of the following constitute a producing cause of economic damages or damages for mental anguish:

6

(1) the use or employment by any person of a false, misleading, or deceptive act or practice that is:

(A) specifically enumerated in a subdivision of Subsection (b) of Section 17.46 of this subchapter; and

(B) relied on by a consumer to the consumer's detriment;

(b) In a suit filed under this section, each consumer who prevails may obtain:

(1) the amount of economic damages found by the trier of fact. If the trier of fact finds that the conduct of the defendant was committed knowingly, the consumer may also recover damages for mental anguish, as found by the trier of fact, and the trier of fact may award not more than three times the amount of economic damages; or if the trier of fact finds the conduct was committed intentionally, the consumer may recover damages for mental anguish, as found by the trier of fact, and the trier of fact may award not more than three times the amount of damages for mental anguish and economic damages[.]

Incident to its judgment, the Texas District Court issued findings of fact and conclusions of law, relying, as noted, in large part on Plaintiff's requests for admissions that by rule were deemed admitted by reason of Defendants' non response. <u>Findings of Facts and Conclusions of Law</u>, Bankr. Ct. Dkt. #18, Exh. 1. That Court thus found that: (a) Defendants represented to Plaintiff that the vehicle was a very rare and valuable "W" Code 427 410 HP Side Oiler speed Ford Fairlane 500; (b) Defendants sold to Plaintiff a vehicle that was "not as advertised" and carried different characteristics because it was a "rebody" that was a conglomeration of aftermarket parts and parts from other vehicles with the VIN number from an authentic rare vehicle welded on; (c) the vehicle Plaintiff purchased was worth "significantly less" than that advertised by Defendants; (d) Plaintiff suffered economic damages in the amount of $100,000;

7

(e) Defendants were "actually aware" that their representations were "false and deceptive" when they made them; (f) Plaintiff "relied" on these representations and Defendants' misrepresentations were a "substantial factor" and "producing cause" in bringing about the injury; (g) that Defendants' misrepresentations were committed knowingly; (h) in a separate finding, that Defendants' misrepresentations were also committed intentionally; and (i) Plaintiff incurred reasonable and necessary attorney fees pursuing his cause of action against Defendants.

Consequently, that Court concluded that Defendants engaged in false, misleading, or deceptive acts and were in violation of two DTPA subsections: § 17.46(b)(5) (representing the vehicle had characteristics and benefits that it did not have) and (b)(7) (representing the vehicle was of a particular quality, style, or model that it was not). The Texas District Court specified no legal conclusion as to any of the other counts alleged in Plaintiff's complaint, including the common law fraud count. That Court concluded that Plaintiff was entitled to treble economic damages pursuant to § 17.50(b)(1) (which provides for treble economic damages if the conduct is committed knowingly) and also stated in a separate finding that Defendants' conduct was intentional. The Court made no finding of any mental anguish and did not award any such damages, though it was empowered to do so under that section.

### Plaintiff's Claim under § 523 (a)(2)(A)

Under § 523(a)(2)(A), a debtor shall not be discharged from any debt "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by— false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition[.]" To succeed on such a claim under this section, a creditor must establish by a preponderance that:

8

> (1) the debtor obtained money through a material misrepresentation that, at the time, the debtor knew was false or made with gross recklessness as to its truth; (2) the debtor intended to deceive the creditor; (3) the creditor justifiably relied on the false representation; and (4) its reliance was the proximate cause of loss.

In re Grenier, 458 Fed. Appx. 436, 438 (6th Cir. 2012)(quoting In re Rembert, 141 F.3d 277, 280–81 (6th Cir. 1998)). The noted Texas District Court judgment's findings, individually and together, are substantially identical to the four items noted, and thus satisfy those requirements.

The key question remains, however, whether the findings were *essential* to the Texas District Court's judgment. Defendants argue that these findings were superfluous to the matter presented, pointing to the lack of allegations of fraud or willful and malicious injury in the complaint that was before that Court. The conclusions of law upon which the Texas District Court based its judgment for Plaintiff on the § 17.46(b)(5) and (b)(7) counts, as well as treble damages under § 17.50(b)(1) required essential findings of several of these elements: (a) Defendants obtained money from the purchase-sale agreement, such that Plaintiff suffered economic damages from the transaction; (b) Defendants committed a misrepresentation by engaging in "false, misleading, or deceptive acts" in their representations of the vehicle; and (c) the misrepresentations were perforce *material* misrepresentations because a successful DTPA action requires such. McCrea v. Cubilla Condo. Corp. N.V., 685 S.W.2d 755, 759 (Tex. App. 1985)(citing Pennington v. Singleton, 606 S.W.2d 682, 687 (Tex. 1980)).

However, the prior proceedings did not require for Plaintiff to show, nor for the Texas District Court to make any finding of, justifiable reliance, as is required for non-dischargeability under § 523(a)(2)(A). The DTPA requires only "producing cause." Don Co. v. Marshall & Stevens, Inc., 990 F.2d 1252 at *7 (5th Cir. 1993); see also Jungran & B.K. Lim v. Lomeli, 2007

9

WL 2428078, n.1 (Tex. App. 2007)(a DTPA action requires producing cause while other actions, such as negligent misrepresentation, require justifiable reliance and proximate causation); but see TIG Ins. Co. v. Sedgwick James of Washington, 184 F. Supp. 2d 591, n. 17 (S.D. Tex. 2001) aff'd, 276 F.3d 754 (5th Cir. 2002)("Although not yet decided in Texas or federal courts, it appears that Texas courts will require that the reliance by a person aggrieved under the DTPA… must be reasonable under the circumstances presented."). The DTPA's requirement of "producing cause" is a lower standard than "proximate cause." Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Puget Plastics Corp., 532 F.3d 398, 402 (5th Cir. 2008)(citing Concorde Limousines, Inc. v. Moloney Coachbuilders, Inc., 835 F.2d 541, 547 (5th Cir. 1987)). It is more difficult for a plaintiff to recover under a fraud claim than under a DTPA claim, in part, because he or she must establish "proximate cause" to demonstrate fraud but need only establish "producing cause" to demonstrate a DTPA violation. Id.

The DTPA grants damages to a plaintiff who relied on certain representations to his or her detriment. However, the Texas District Court made no finding on whether Plaintiff's reliance was "justifiable." Even if such a finding was made, it would not have been "essential" to the judgment, which was and could be based on findings excluding such.

Alternatively, there was also no "essential" determination that Defendants acted *both* knowingly *and* intentionally. The § 17.46 (b)(5) and (b)(7) counts, under which the Texas District Court granted judgment for Plaintiff, do not require knowledge or intent. In re Bairrington, 183 B.R. 754, 759 (Bankr. W.D. Tex. 1995)(and the cases cited therein); In re McLain, 2011 WL 1638578 at *4 (Bankr. W.D. Tex. 2011). These two subsections are unlike

other causes of action under different DTPA subsections that *do* have a scienter requirement. E.g. § 17.46 (9) & (10)("with intent"); (13)("knowingly"); (17)("fraudulently").

In order for this Court to determine whether it was essential for the Texas District Court to make these findings of knowledge and intentionality (which are both necessary for collateral estoppel purposes), it must look to the substance of the Texas District Court's findings. One such finding was that Defendants acted knowingly, and, thus it assessed treble damages on that basis, because the DTPA's damages section, § 17.50, provides for discretionary trebling of economic damages in the event that the trier of fact determines that the defendant's conduct was committed knowingly.

Additionally, that section provides that, as an independent alternative, if the conduct was intentional, the trier of fact may treble the sum of (a) economic damages and (b) damages for mental anguish. Under the statute, the Texas District Court was entitled to, and clearly did, assess treble economic damages based on its conclusion that the actions of Defendants were committed *knowingly*. While, as noted, it then went on to also state those actions were committed intentionally, it need not have done so, simply because under that same statute, the "knowingly" conclusion was itself completely sufficient for trebling purposes. It thus follows that the intentionality finding was not "essential" to the Texas District Court's result, and, for that reason, such precludes the application of collateral estoppel to this non-dischargeability situation (where a finding of intentionality is crucial to the result). Put another way, certainly a finding of the conduct being *either* knowing *or* intentional was essential to the trebling of economic damages. However, it cannot be said that *both* were essential. The finding that the conduct was knowing was the initial and explicit (and a sufficient statutory) basis for the trebling

11

of the damages. Accordingly, it can be fairly concluded that the additional intentionality finding was unnecessary and superfluous to the result, and, thus not "essential."

Looking at the issue another way, various Courts applying Texas law have recognized that, generally, collateral estoppel does not apply to alternative holdings, citing Restatement (Second) of Judgments § 27, cmt. i (1982), which states: "If a judgment of a court of first instance is based on determinations of two issues, either of which standing independently would be sufficient to support the result, the judgment is not conclusive with respect to either issue standing alone." Johnson & Higgins of Texas, Inc. v. Kenneco Energy, Inc., 962 S.W.2d 507, 522 (Tex. 1998); In re Waco Town Square Partners, L.P., 2013 WL 1748944 at *3 (Bankr. S.D. Tex. 2013); McCollough v. Texas Pub. Util. Comm'n, 2009 WL 2543153 at *7 (Tex. App. 2009). A Texas Bankruptcy Court has followed similar logic, holding that an arbitration award arising under the DTPA should not be granted preclusive effect because it found that the defendant's conduct was "knowing *and/or* intentional." In re Horne, 2011 WL 350473 at *9-10 (Bankr. W.D. Tex. 2011)(emphasis added).

The Texas Legislature enacted the DTPA in order to provide consumers with efficient recourse for injuries sustained from false, misleading, and deceptive business practices, unconscionable actions, and breaches of warranty. Sec. Serv. Fed. Credit Union v. Sanders, 264 S.W.3d 292, 299-300 (Tex. App. 2008). It gives a plaintiff a remedy that is more easily attainable than a remedy for fraud. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa., 532 F.3d at 402 (citing Concorde Limousines, Inc., 835 F.2d at 547). The DTPA requires of a plaintiff a relatively low burden of proof because it contains causes of action that require no scienter or culpability on the part of the defendant (such as the two causes of action upon which the Texas

District Court's judgment was predicated).  For the foregoing reasons, collateral estoppel does not preclude litigation of the non-dischargeability action under § 523(a)(2)(A).

## Plaintiff's Claims under § 523 (a)(6)

In order to satisfy the requirements of § 523(a)(6), a plaintiff must prove by a preponderance of the evidence that the defendant "willfully and maliciously" injured it.  Kawaauhau v. Geiger, 523 U.S. 57, 59 (1998).  The terms "willful" and "malicious" are distinct and separate concepts.  In re Martin, 321 B.R. 437, 440 (Bankr. N.D. Ohio 2004).  For a debt to be non-dischargeable, the *injury* must have been both willful and intentional, not just the *act* giving rise to injury.  Kawaauhau v. Geiger, 523 U.S. 57, 61 (1998).  To establish that a defendant "willfully" injured it, a plaintiff must show that the defendant either acted with an actual intent to cause the alleged injury or a belief that the alleged injury was substantially certain to result from his act.  See Phillips v. Weissert (In re Phillips), 434 B.R. 475, 483 (B.A.P. 6th Cir. 2010)(citing Markowitz v. Campbell (In re Markowitz), 190 F.3d 455, 463 (6th Cir. 1999)).  In order to establish that a defendant "maliciously" injured it, a plaintiff must show that the defendant acted in disregard of his duties or without just cause or excuse.  Phillips, 434 B.R. at 483 (quoting Wheeler v. Laudani, 783 F.2d 610, 615 (6th Cir. 1986)).

Plaintiff's complaint before the Texas District Court did not allege malice, nor did the Court make any finding as to such.  A violation of the DTPA does not necessarily require a finding of malice.  As one Texas Bankruptcy Court discussed:

> The Plaintiffs did not allege in their state court complaint, and the arbitrator did not find, either a subjective substantial certainty of harm or that the Debtor subjectively intended to cause harm to the Plaintiffs.  A finding that the Debtor acted intentionally under the DTPA "does not lead to the conclusion that the state court determined that [the debtor] deliberately or intentionally acted to cause

13

> harm or injury as required under § 523(a)(6)." <u>Kuhn v. Driver</u> (<u>In re Driver</u>), 305 B.R. 266, 270 (Bankr. N.D. Tex. 2003); <u>see also</u> <u>Bairrington</u>, 183 B.R. at 761 (concluding that collateral estoppel could not be applied because the elements of a deceptive trade practice or deceptive act alone are not identical to the elements needed to establish a willful and malicious act under section 523(a)(6)).

<u>In re Horne</u>, 2011 WL 350473 at *10. The Texas District Court made no such finding of willful and malicious injury, and if it had, such would not be considered "essential" to its judgment, based on its other findings and conclusions. Collateral estoppel therefore does not preclude the litigation of the § 523(a)(6) count.

## CONCLUSION

This Court hereby denies Plaintiff's motion for summary judgment, and an order to that effect is being entered concurrently.

.

**Signed on June 12, 2013**

                                                   **/s/ Walter Shapero**
                                             **Walter Shapero**
                                             **United States Bankruptcy Judge**